UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| WILLIAM R. MOSES, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-00619 (RC) |
| | : | | |
| v. | : | Re Document No.: | 26 |
| | : | | |
| JOHN F. KERRY, | : | | |
| *in official role as Secretary of State* | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.  INTRODUCTION

In this action, a former State Department employee contends that his termination amid false allegations of sexual harassment constituted unlawful discrimination on the basis of both race and age.  Because the plaintiff has not proffered evidence that either his race or his age caused the actions that aggrieved him, the Court grants the defendant's motion for summary judgment.

### II.  FACTUAL BACKGROUND[1]

In early 2011, William R. Moses, an African-American male then aged sixty-three, began a temporary duty assignment as a Foreign Affairs Officer in the U.S. Embassy in Nairobi,

---

[1] In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Accordingly, where facts are disputed, the Court will view the evidence in the light most favorable to Mr. Moses.

Kenya. *See* Moses EEO Investigative Aff., Pl.'s Ex. A 00063–75.[2] In this capacity, Mr. Moses was assigned to the State Department's Bureau of International Narcotics and Law Enforcement Affairs, Office of Criminal Justice Assistance and Partnership ("INL/CAP"). *See* EEO Investigation Report, Pl.'s Ex. A 00001. His primary task was to develop a training program for the Kenya Police Reform Implementation Committee ("PRIC"). *See* Moses EEO Investigative Aff., Pl.'s Ex. A 00064–65. Mr. Moses performed this role well, *see id.* at 00065; Redmon Dep. at 9, Pl.'s Ex. D, ECF No. 31-2, and his superiors sought to extend his ninety-day assignment by an additional ninety days, *see* Moses EEO Investigative Aff., Pl.'s Ex. A 00066.

By late February 2011, however, Mr. Moses's superiors had begun to doubt his suitability for his post. Reports surfaced that Mr. Moses had inappropriately touched a Kenyan woman during a meeting with Kenyan police officials and had sexually harassed an American official of the U.S. Embassy. *See* Moran email of Feb. 23, 2011, Pl.'s Ex. A 00148. Around the same time, there arose concerns about Mr. Moses's failure to make progress on police reform efforts and to gain the respect of Kenyan officials. *See id.* Over a series of emails, INL/CAP Office Director Erin Barclay, Mr. Moses's rating officer Roger Moran, and the Embassy's Deputy Chief of Mission Lee Brudvig discussed the best course of action. *See* Barclay EEO Investigative Aff., Pl.'s Ex. A 00109–10; Moran EEO Investigative Aff., Pl.'s Ex. A 00099; Moran email of Feb. 25, 2011, Pl.'s Ex. A 00137–38; Barclay-Moran-Brudvig emails, Pl.'s Ex. A 00134–35, 139–40, 145–49, 153. On February 25, 2011, Ms. Barclay indicated to Mr. Moran that she was "strongly

---

[2] Because both parties cite the Bates numbers for Mr. Moses's Exhibit A, which contains multiple documents, rather than the page number of the original document, the Court will adopt the same convention. Additionally, because Exhibit A is distributed across multiple files on the docket on account of its size, the Court will omit docket numbers for simplicity. Similarly, because excerpts of Mr. Moses's 2012 and 2014 deposition transcripts appear on the docket in several places, the Court's citations to these depositions will indicate only the year, page, and line numbers, not exhibit or docket numbers.

considering moving towards separation/termination" on the basis of Mr. Moses's "conduct." Barclay email of Feb. 25, 2011, Pl.'s Ex. A 00135.

The next day, February 26, 2011, Mr. Moses received a phone call from Ms. Barclay, who informed him that a serious problem had arisen and that he needed to return promptly to Washington, D.C. *See* Moses 2014 Dep. at 53:1–5, 66:1–3; Barclay EEO Investigative Aff., Pl.'s Ex. A 00109–10.[3] Subsequently, in an email to Mr. Moran and Mr. Brudvig, Ms. Barclay concluded that she would "mov[e] forward with disciplinary procedures based on [Mr. Moses's] performance." Barclay email of Feb. 28, 2011, Pl.'s Ex. A 00153. In her view, because the sexual harassment allegations were a matter for the Embassy to resolve, she would be "unable to use [his] EEO conduct for [her] purposes Stateside." *Id.*

On March 2, 2011, Ms. Barclay met with Mr. Moses in Washington, D.C., and informed him that she had learned of allegations that he had sexually harassed certain individuals. *See* Moses 2014 Dep. at 71:3–4, 72:11–18, 75:18–19; Barclay email of Mar. 3, 2011, Pl.'s Ex. A 00157–58. She instructed him to vacate his cubicle and move to another building immediately. *See* Moses 2014 Dep. at 171:17–22. Within a month, Mr. Moses was terminated. *See* Termination letter of Mar. 30, 2011, Pl.'s Ex. A 00072–73.

According to Mr. Moses, the false sexual harassment allegations were "orchestrated" by Jeffrey Lischke, the Regional Security Officer at the U.S. Embassy in Nairobi. Moses 2012 Dep. at 48:2–3; *see also* Lischke Decl., Pl.'s Ex. J, ECF No. 32-2. Mr. Moses had developed a relationship with Mr. Lischke's girlfriend and, further complicating matters, had exposed a lie

---

[3] The record does not directly indicate the date of this initial phone call, but Mr. Moses testified that it occurred on the Saturday before he met with Ms. Barclay. *See* Moses 2014 Dep. at 53:1–5. This timing is consistent with other record evidence. *See* Moran-Barclay-Brudvig emails of Feb. 26, 2011, Pl.'s Ex. A 00145 (Mr. Moran recommending that Ms. Barclay call Mr. Moses to follow up on her initial email notification).

told to the girlfriend by Mr. Lischke. *See* Moses 2014 Dep. at 79:2–84:17, 115:1–14. By Mr. Moses's account, Mr. Lischke responded by blackmailing a female Embassy employee into fabricating the sexual harassment allegations; in exchange for her assistance, he overlooked her prior breach of security protocols. *See id.* at 88, 101.

In June 2011, Mr. Moses filed an Equal Employment Opportunity ("EEO") complaint, alleging that he had suffered discrimination based on race and age. *See* EEO Investigation Report, Pl.'s Ex. A 00001. The following month, both claims were accepted for investigation. *See* Acceptance Letter of July 13, 2011, Def.'s Ex. A, ECF No. 26-3. During the course of the investigation, Ms. Barclay submitted an affidavit stating that Mr. Moses was terminated for the "sole reason" of unsatisfactory work performance. *See* Barclay EEO Investigative Aff., Pl.'s Ex. A 00111. In particular, she explained that Mr. Moses had "fail[ed] to develop good work relationships with the Kenyan Police" and that "key Kenyan police officials had not accepted Mr. Moses and, at times, failed to include him in important international meetings." *Id.* at 00110. Mr. Moran, however, filed his own affidavit averring that Mr. Moses was terminated "[b]ecause of repeated acts of sexual harassment and unacceptable behavior toward women in the course of his assigned work." Moran EEO Investigative Aff., Pl.'s Ex. A 00100. In January 2013, an Equal Employment Opportunity Commission ("EEOC") administrative judge granted summary judgment on Mr. Moses's claims, reasoning that he had failed to proffer evidence that Ms. Barclay's non-discriminatory, performance-based reasons for his termination were pretextual. *See* EEOC Decision, Def.'s Ex. G, ECF No. 26-9.

In May 2013, Mr. Moses brought this action against Secretary of State John F. Kerry in his official capacity ("Defendant"). *See* Compl. 1, ECF. No. 1. In his amended complaint, he alleges that his termination constituted discrimination on the basis of race and age, in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, respectively. *See* First Am. Compl. ¶¶ 9–30, ECF No. 18.  By way of relief, Mr. Moses asks this Court to declare that his employer's actions were unlawful, to order his reinstatement, and to award monetary relief including back pay and compensatory damages.  *See id.* at 6–8.  Following discovery, Defendant moved for summary judgment, and the motion is now ripe for decision.  *See* Def.'s Mot. Summ. J., ECF No. 26.

### III.  LEGAL STANDARD

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  Conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### IV.  ANALYSIS

In contending that his dismissal constituted unlawful discrimination on the basis of race and age, Mr. Moses invokes the protections of Title VII and the ADEA, respectively.  *See* First Am. Compl. ¶¶ 9–30.  As explained below, however, because Mr. Moses has not proffered any evidence that he suffered discrimination on the basis of his race or age, Defendant is entitled to summary judgment on both of Mr. Moses's claims.

## A. Legal Framework

Title VII provides that "[a]ll personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race . . . ." 42 U.S.C. § 2000e-16. Similarly, the ADEA provides that "[a]ll personnel actions affecting employees . . . who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Proscribing discrimination in nearly identical language, Title VII and the ADEA make it illegal "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's" protected status—including race or age, under the respective statutes. 42 U.S.C. § 2000e–2(a)(1); *see also* 29 U.S.C. § 623(a)(1).[4]

Where a Title VII or ADEA plaintiff proffers only indirect evidence of discrimination at summary judgment, courts apply the three-part burden-shifting framework of *McDonnell Douglas Corp. v. Green*. *See Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003) (Title VII); *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1155 (D.C. Cir. 2004) (ADEA). Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination; the employer then must articulate a legitimate, nondiscriminatory reason for its action; and finally, the plaintiff must show that the employer's reason was a pretextual cover for discrimination. 411 U.S. 792, 802–805 (1973). Under both Title VII and the ADEA, a plaintiff makes out a prima facie case of disparate-treatment discrimination by establishing (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. *See Czekalski v. Peters*, 475 F.3d 360, 364

---

[4] The ADEA omits the word "to" before "discriminate." *See* 29 U.S.C. § 623(a)(1).

(D.C. Cir. 2007) (Title VII); *Turner v. U.S. Capitol Police*, 34 F. Supp. 3d 124, 135 (D.D.C. 2014) (ADEA).[5]

In actions under Title VII and the ADEA, where a plaintiff has suffered an "adverse employment action" and his employer asserts a "legitimate, non-discriminatory reason" for the alleged discrimination, the district court must forgo the *McDonnell Douglas* burden-shifting framework. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (Title VII); *see also Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (applying *Brady* framework to ADEA claim). Instead, at summary judgment, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race [or age]?" *Brady*, 520 F.3d at 494; *see also Barnett*, 715 F.3d at 358. A plaintiff can demonstrate that the employer's stated reason was "not the actual reason" by "produc[ing] evidence suggesting that the employer treated other employees of a different race [or of a significantly younger age]. . . more favorably in the same factual circumstances" or by showing that the employer "is making up or lying about the underlying facts . . . ." *Brady*, 520 F.3d at 495; *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) (explaining that an inference of discrimination cannot be drawn from the fact that a plaintiff lost out to an "insignificantly

---

[5] In *Gross v. FBL Financial Services, Inc.*, the Supreme Court held that a plaintiff bringing an age discrimination claim under the ADEA must show that age was the "but-for" cause of the challenged action. 557 U.S. 167, 177–78 (2009); *accord Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 376 (D.C. Cir. 2010). But given that *Gross* concerned the ultimate burden of persuasion, and not the burdens of production (the role of the *McDonnell Douglas* framework), the "but-for" causation requirement of *Gross* impacts neither the prima facie case elements nor *McDonnell Douglas*'s applicability in the ADEA context. *See Gross*, 557 U.S. at 175 n.2; *accord Martin v. District of Columbia*, No. 11-cv-01069, 2015 WL 294723, at *9 n.12 (D.D.C. Jan. 23, 2015).

younger" individual). "If the employer's stated belief about the underlying facts is reasonable in light of the evidence, however, there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495 (citing *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) ("[A]n employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false.")).

Where a plaintiff successfully demonstrates that an employer's proffered nondiscriminatory reason is "not the actual reason," he still must show that "the employer intentionally discriminated against the employee on the basis of race [or age]" to sustain claims under Title VII or the ADEA, respectively. *Brady*, 520 F.3d at 494; *see also id.* at 496 n.4; *Barnett*, 715 F.3d at 358.[6] Put differently, a plaintiff cannot survive summary judgment merely by showing that the employer was motivated by a *different* nondiscriminatory reason; such a plaintiff "shoots himself in the foot" by demonstrating "that the real explanation for the employer's behavior is not discrimination, but some other motivation." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998) (explaining that where a terminated plaintiff alleging age discrimination claimed that the "real reason" behind his firing was his employer's desire to cover up his disclosure of regulatory noncompliance, "there [was] no point in sending the case to the jury"). Accordingly, in answering *Brady*'s "central question," courts examine the totality of the evidence and ask "whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be

---

[6] *See also Hairston v. Vance-Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014) (citation omitted) (holding that at summary judgment, the pretext inquiry under *Brady* requires that the plaintiff proffer evidence of "demonstrably discriminatory motive").

available to the plaintiff . . . or any contrary evidence that may be available to the employer." *Hamilton v. Geithner*, 666 F.3d 1344, 1351 (D.C. Cir. 2012) (quoting *Aka*, 156 F.3d at 1291).

### B.  Mr. Moses's Title VII and ADEA Claims

Applying the above principles, the Court concludes that Mr. Moses's Title VII and ADEA claims cannot survive summary judgment.

Defendant first contends that Mr. Moses's claims of race and age discrimination fail because he was dismissed for a non-discriminatory reason—his unsatisfactory job performance. *See* Def.'s Mem. Supp. Mot. Summ. J. 5–9.  In support, Defendant cites Ms. Barclay's affidavit, in which she avers that although she was aware of the sexual harassment allegations, she ultimately chose to terminate Mr. Moses for his lackluster performance, reserving any "conduct issues" for "the domain of the US Embassy."  Barclay EEO Investigative Aff., Pl.'s Ex. A 00111; *see also* Barclay email of Feb. 28, 2011, Pl.'s Ex. A 00153 ("Unless there is an investigation at Post and/or an EEO complaint filed by one of your folks, I am unable to use Bill's EEO conduct for my purposes Stateside. . . . From this end, I am moving forward with disciplinary procedures based on Bill's performance . . . .").

Because the parties do not dispute that Mr. Moses suffered an "adverse employment action"[7] and because Defendant asserts a "legitimate, non-discriminatory reason" for the alleged discrimination, the Court is tasked with resolving *Brady*'s central question: Has Mr. Moses produced evidence that Defendant's "asserted non-discriminatory reason was not the actual

---

[7] Mr. Moses's filings evince some confusion over the specific "adverse employment action" that he challenges.  His complaint makes clear that he challenges his termination, *see* First Am. Compl. ¶¶ 10, 15, 25, though he may also be complaining about the *manner* of his termination, *see id.*; Pl.'s Opp'n 10 ("There was a complete and utter disregard for any form of due process.").  Mr. Moses, however, has not asserted any due process claim.  *See infra* note 12.

reason and that [Defendant] intentionally discriminated against [him] on the basis of race [or age]?" *Brady*, 520 F.3d at 494; *see also Barnett*, 715 F.3d at 358.

The Court concludes that Mr. Moses has proffered evidence sufficient to support a jury finding that Defendant's nondiscriminatory reason—deficient performance—was "not the actual reason" for his termination. *Brady*, 520 F.3d at 494. Mr. Moses's evidence could suggest that the allegations of sexual harassment were the real basis for his abrupt dismissal.[8] Although the record shows that, as a formal matter, Ms. Barclay cited concerns about Mr. Moses's work performance, certain evidence suggests that these criticisms arose in parallel with the reports of sexual harassment, and a reasonable jury could conclude that the harassment allegations were far more salient, at least in the mind of Ms. Barclay. *See* Moran email of Feb. 23, 2011, Pl.'s Ex. A 00148. A jury could further discount purported concerns about Mr. Moses's performance in light of evidence that, before the sexual harassment allegations surfaced, his superiors had been so satisfied with Mr. Moses's work that they had sought to extend his ninety-day assignment. *See* Moses EEO Investigative Aff., Pl.'s Ex. A 00065–66.[9] Accordingly, a jury could find that Defendant has been less than candid about the underlying facts surrounding Mr. Moses's termination. *See Brady*, 520 F.3d at 495.

But Mr. Moses cannot overcome summary judgment by asserting only that the sexual harassment allegations against him were the real reason for his termination. Rather, Mr. Moses

---

[8] *See* Moran EEO Investigative Aff., Pl.'s Ex. A 00100 (stating that Mr. Moses was terminated "[b]ecause of repeated acts of sexual harassment and unacceptable behavior toward women in the course of his assigned work"); Barclay email of Feb. 25, 2011, Pl.'s Ex. A 00135 (explaining to Mr. Moran that she was "strongly considering moving towards separation/termination" on the basis of Mr. Moses's "conduct"); Barclay email of Feb. 26, 2011, Pl.'s Ex. A 00162 ("Lee [Brudvig], first of all, let me sincerely apologize for Bill's behavior—it is completely unacceptable and I intend to take the strongest of actions upon his return.").

[9] *See also* Moran email of Feb. 24, 2011, Pl.'s Ex. A 00147 ("[G]iven the gist of our chat, why was the request to extend Bill in place made so recently?").

must proffer evidence that "the employer intentionally discriminated against [him]" on the basis of race or age. *Brady*, 520 F.3d at 494; *see also Aka*, 156 F.3d at 1290.[10] Absent such evidence, Mr. Moses would be "shoot[ing] himself in the foot" by merely proffering a different reason for his termination that is nonetheless still nondiscriminatory—the allegations of sexual harassment. *Aka*, 156 F.3d at 1291.[11] On this matter, Defendant submits that the record is devoid of evidence that could support a finding that Mr. Moses suffered any adverse employment action *on account of either his race or his age*. Because the Court agrees, both of Mr. Moses's claims must fail.

Mr. Moses contends that his dismissal on the basis of unverified allegations of sexual harassment, without any opportunity to refute the allegations, was motivated by an "invidious

---

[10] *See also Williams v. Vilsack*, 620 F. Supp. 2d 40, 49 (D.D.C. 2009) (explaining, in granting summary judgment on race discrimination claim, that "even assuming Plaintiffs were able to show that Defendants mistakenly applied the eligibility criteria, Plaintiffs would still have to proffer evidence that Defendants applied the criteria incorrectly *based on* Plaintiffs' race, which they have not done"); *Joyce v. Office of Architect of Capitol*, No. 12-cv-1837, 2015 WL 3393533, at *8 (D.D.C. May 27, 2015) (explaining, in granting summary judgment on age discrimination claim, that even if the plaintiff were "able to undermine the validity of the [employer's] reasons for the shift change . . . , his claim nonetheless fails to satisfy its central burden—namely, 'showing that age was *a* factor in the challenged personnel action'" (quoting *Ford v. Mabus*, 629 F.3d 198, 204 (D.C. Cir. 2010))).

[11] To be sure, in *Aka*, the D.C. Circuit explained that plaintiffs cannot be "routinely required to submit evidence over and above rebutting the employer's stated explanation in order to avoid summary judgment." *Aka*, 156 F.3d at 1290. But *Aka* (as does *Brady*) makes clear that in all cases, "the court must consider all the evidence in its full context in deciding whether the plaintiff has met his burden of showing that a reasonable jury could conclude that *he had suffered discrimination* . . . ." *Id.* (emphasis added); *see also Evans v. Sebelius*, 716 F.3d 617, 620 (D.C. Cir. 2013) (reading *Aka* and *Brady*'s central question together). In certain cases, rebutting a proffered nondiscriminatory reason suffices to overcome summary judgment because the jury, left with *no other explanation*, may infer that the employer unlawfully discriminated against the plaintiff. *See Hamilton*, 666 F.3d at 1351–57 (concluding that evidence of job candidates' qualifications and the subjective and unsupported nature of the employer's nondiscriminatory reason that the plaintiff performed less well in an interview could lead a jury to "disbelieve" the employer and find in favor of the plaintiff); *Aka*, 156 F.3d at 1294 ("In an appropriate case, the factfinder's disbelief of the reasons put forward by the defendant will allow it to infer intentional discrimination" (citation, quotation marks, and alteration omitted)). But where the plaintiff's own evidence supports only another *nondiscriminatory* reason, as is the case here, the jury cannot infer discrimination. *See Aka*, 156 F.3d at 1291.

stereotype" based on his race and older age. First Am. Compl. ¶ 9; *see also* Pl.'s Opp'n 10, ECF No. 28 (contending that Mr. Moses fell victim to an "invidious stereotype of the oversexed, older African-American male"). That is, by his account, if he had not been black or if he had been significantly younger, he would have at least received due process. *See* Moses 2014 Dep. at 115:1–116:6, 163: 10–16, 170:2–4.[12] Even assuming (without deciding) that Defendant's investigation was somehow deficient,[13] the Court still concludes that Mr. Moses has failed to proffer evidence that his termination was precipitated by his race or age.

---

[12] No due process claim is before the Court. Accordingly, the Court need not opine on Defendant's argument that Mr. Moses, as a probationary employee, received the "minimal due process" to which he was entitled under the applicable regulations and case law. *See* Def.'s Mem. Supp. Mot. Summ. J. 13. However, the Court notes that the Human Resource professionals advising the decision-makers seemed to suggest to them that they could not take action against Mr. Moses based on the allegations that had not yet been investigated and adjudicated. *See* Barclay email of Feb. 28, 2011, Pl.'s Ex. A 00153.

[13] Because the Court assumes that a cursory investigation of alleged misconduct, tainted by race or age-based stereotypes, could be actionable under Title VII, it declines to consider the EEOC case that Defendant submits as persuasive authority. *See O'Dell v. Henderson*, EEOC Decision No. 01981939, 2001 WL 683128, at *3 (May 23, 2001) (suggesting that whether an agency conducted "a thorough investigation" into employee's alleged misconduct is irrelevant, so long as the agency "stated that it believed that complainant engaged in inappropriate conduct and it took action to address that conduct"); *accord* Def.'s Reply 4 ("Reports of sexual harassment in and of themselves constitute a legitimate, nondiscriminatory reason for termination"). The Court notes, however, that *O'Dell*'s broad holding is potentially difficult to square with *Brady*'s narrower reasoning. *See Brady*, 520 F.3d at 495 ("If the employer's stated belief about the underlying facts is *reasonable in light of the evidence*, however, there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." (emphasis added)); *id.* at 496 ("[M]any employers today aggressively react to sexual harassment allegations; an employer does not engage in discrimination on the basis of *race* by strictly and *uniformly enforcing* a policy against any remote hint or suggestion of sexual harassment in the workplace." (latter emphasis added)). In any event, to the extent that the investigation of Mr. Moses's conduct was cursory, the evidence suggests that such expedition was motivated not by Mr. Moses's race or age, but by his probationary status allowing for a smoother and simplified process. *See* Barclay email of Feb. 28, 2011, Pl.'s Ex. A 00161 ("I would like to request that Post undertake and conclude an investigation into the EEO allegations as quickly as possible. Bill is on probationary status only until mid-May and after that, it will be virtually impossible to move him. From this end, I am moving forward with disciplinary procedures based on Bill's performance . . . .").

Throughout his deposition, Mr. Moses concedes that he has no evidence that race or age informed his employer's actions. In response to numerous questions seeking the basis for his belief that race or age motivated the alleged discrimination, Mr. Moses could point only to his own beliefs and suspicions.[14] These unfounded assertions cannot enable Mr. Moses to overcome summary judgment. *See Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (holding that plaintiff's "subjective belief" that he suffered discrimination could not overcome summary judgment); *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 401 (7th Cir. 1997)

---

[14] The record is replete with Mr. Moses's speculative responses:

> I don't believe . . . that if I had been a white male that the course of action would have been as stern as it was. (Moses 2012 Dep. at 19:3–5)

> I have seen this type of behavior where a black person would do something and [sic] not given an opportunity to either defend themselves or an opportunity to continue. I was kicked out. I was thrown under the bus. This was a lynching. It was a lynching without a trial. (*Id.* at 22:13–18)

> I believe that if I was white, I would have had an opportunity to explain . . . that whatever the allegations are, let's do a thorough investigation, not a one-sided, in quotes, investigation. (*Id.* at 25:2–7)

> I believe that if I was younger, the combination being black [sic], being over 60 . . . . Age may be a factor. (*Id.* at 26:12–22)

> I know that [my age] may have played a part in it[,] [but] I can't be sure. (*Id.* at 27:15–19)

> [I]f I'm putting two things together, being older, . . . it might be easier to say well, you know, he's had multiple careers. (Moses 2014 Dep. at 139:14–18)

> I don't believe [Ms. Barclay] would have rushed to judgment if it wasn't an older black man . . . . I think it may be part of her racist mind set, that we get rid of him, that's it. (*Id.* at 163:10–12, 19–20)

("If the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed." (internal alteration and citation omitted)); *Harrell v. Hutson*, 30 F.3d 129 (4th Cir. 1994) (unpublished) ("[A] subjective belief that one has been discriminated against, no matter how fervent, cannot be the sole basis of judicial relief.").

Nor has Mr. Moses identified any younger or non-African-American individuals accused of sexual harassment who were treated more favorably then he was. *See Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1554 (D.C. Cir. 1997) (rejecting former employee's claim that law firm salary policy was not "consistently and systematically enforced" and concluding that employee failed to identify "nearly identical" individuals for whom the firm did not enforce the policy).[15] The amended complaint asserts that "on at least one prior occasion," a white, male State Department employee under age forty, also based at the U.S. Embassy in Nairobi, "was provided a full and fair opportunity to defend himself against similar charges of sexual harassment before being disciplined for misconduct." First Am. Compl. ¶ 10. But now, at summary judgment, Mr. Moses's evidence shows that he was "unaware of any similar circumstances" relevant to his claims. Moses EEO Investigative Aff., Pl.'s Ex. A 00067; *see also* Moses 2014 Dep. at 139:11–140:8 ("I don't have names . . . . And whether I was replaced or not, I don't know."). At one point in his 2014 deposition, Mr. Moses echoed his amended complaint: While unable to offer "particulars" or "any accurate recollection," he asserted that "others were given what [he] consider[ed] due process, . . . and they were not a black person, it [sic] was a white person." Moses 2014 Dep. at 116:12–117:4. But this speculative, conclusory

---

[15] *See also McDonnell Douglas*, 411 U.S. at 804 (explaining that in context of pretext analysis, an employer "may justifiably refuse to rehire one who was engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to members of all races").

statement cannot create a genuine dispute of material fact. *See Greene*, 164 F.3d at 675 (explaining that conclusory assertions without any evidentiary support do not establish a genuine issue for trial).

Lastly, even if the Court credits Mr. Moses's account of Mr. Lischke's role in "orchestrat[ing]" the sexual harassment allegations, Moses 2012 Dep. at 48:2–3, Mr. Moses also concedes that he has no evidence that his race or age motivated Mr. Lischke, *see id.* at 51:14–52:18.[16] By Mr. Moses's own account, Mr. Lischke was driven by "a strong personal animus"—his desire to punish Mr. Moses, who allegedly exposed a lie that Mr. Lischke had told to his girlfriend. Pl.'s Opp'n 8.[17] Neither Title VII nor the ADEA protects Mr. Moses from a co-worker's personal vendetta that is motivated by neither race nor age. *See Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1126 (D.C. Cir. 2002) (granting summary judgment and explaining that to do otherwise "would trivialize the important values protected by Title VII and elevate a gross workplace dispute into a federal case"); *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 471 (8th Cir. 2011) ("[Title VII and the ADEA] do not prohibit employment decisions based upon . . .

---

[16] Elsewhere, Mr. Moses asserts that Mr. Lischke was "racis[t]" on the basis that he is a "white man who loves black women, black African women in particular." Moses 2014 Dep. at 111:9–12. Defendant correctly notes the irony here: It is Mr. Moses, not Mr. Lischke, who frames the competition over women in racialized terms. Def.'s Reply 3.

[17] At one point in his deposition, Mr. Moses describes his theory of Mr. Lischke's involvement in this way:

> I think that Lee [Brudvig] and Jeff [Lischke] are close. They work together. . . . Whatever Jeff told him, time to get rid of him, he was motivated. Get rid of that black man. And that's coming from Jeff—get rid of that black man. And he reacted to it.

Moses 2012 Dep. 41:13–19. The Court understands the statement "get rid of that black man" to be Mr. Moses's hypothetical account of what Mr. Lischke might have told Mr. Brudvig, rather than Mr. Moses's recounting of a conversation that actually occurred.

personal conflicts between employees . . . .").[18]  At bottom, because Mr. Lischke's alleged plot represents simply another theory that Mr. Moses's termination stemmed not from unlawful "discrimination, but some other motivation," there is "no point in sending the case to the jury." *Aka*, 156 F.3d at 1291.

At summary judgment, Mr. Moses must proffer "sufficient evidence supporting the claimed factual dispute." *Anderson*, 477 U.S. at 249 (citation omitted); *see also Celotex*, 477 U.S. at 324 (explaining that nonmovant must "go beyond the pleadings").  Because Mr. Moses has not proffered any evidence that he suffered discrimination on the basis of his race or age, Defendant is entitled to summary judgment on his Title VII and ADEA claims.

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 26) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 23, 2015                                                                            RUDOLPH CONTRERAS
                                                                                                              United States District Judge

---

[18] In the alternative, Defendant argues that Mr. Lischke had no authority to terminate Mr. Moses and was not involved with the decision.  *See* Def.'s Mem. Supp. Mot. Summ. J. 11–12.  The Court declines to address this argument; if Mr. Lischke indeed acted with a discriminatory motive (and there is no evidence that he did), then Mr. Moses's claims might require a different analysis.  *Cf. Rattigan v. Holder*, 689 F.3d 764, 771 (D.C. Cir. 2012) (holding that in the context of a Title VII retaliation claim based on an allegedly false report of security concerns, the plaintiff could "proceed only if he c[ould] show that agency employees acted with a retaliatory or discriminatory motive in reporting or referring information that they knew to be false").